**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| KEITHEN R. LANDRY | CIVIL ACTION NO. 21-2714 |
| VERSUS | JUDGE ALEXANDER C. VAN HOOK |
| CB&I, LLC | MAGISTRATE JUDGE LEBLANC |

## MEMORANDUM RULING

CB&I, LLC ("CB&I") hired Keithen R. Landry ("Landry") as a foreman on the construction of a liquified natural gas facility. About sixteen months later, CB&I merged Landry's labor crew with that of another foreman because their respective crews had become too small. CB&I named the other foreman as the supervisor of the merged crew, and Landry, who is African American, has alleged that it did so because of his race. Perhaps coincidentally, the first day after his demotion Landry both injured himself when moving field equipment and filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). Two weeks after his injury and the EEOC charge, CB&I terminated Landry when he violated its mobile device policy twice in seventy-two hours. Landry has alleged that CB&I terminated him either because of his injury or as retaliation for filing an EEOC charge. Because Landry has not offered any evidence to support his causes of action, the Court grants CB&I's motion for summary judgment.

## Background

On December 12, 2017, Landry began work on the Cameron LNG Project in Hackberry, Louisiana as the foreman of a labor crew for lighting equipment. Landry's Dep. 79-80, Record Document 70-2. James Beck ("Beck"), the general foreman of labor, supervised Landry and at least three other foremen of labor crews. *Id.* at 88. Landry is African American, while Beck and the other foreman under his supervision are white. *Id.*

When Landry started as the lighting foreman, he had four laborers on his crew. Landry's Dep. 152. According to Landry, he had issues with a white laborer on his crew, Caleb Phillips ("Phillips"), for frequently missing work and failing to perform his assignments. *Id.* at 90. Landry said that he discussed Phillips's behavior, including the missed work, with Beck. *Id.* at 90, 129. But Beck "prevented [Landry] numerous times" from disciplining Phillips to protect Phillips's job. *Id.* at 90, 129. Landry believed that Beck protected Phillips's job because "they [were] buddies." *Id.* at 101. In his deposition, Landry admitted that he didn't know whether Beck "protected" Phillips because of his race, and apparently, Landry never complained to Beck that Phillips had received preferential treatment because of his race. *Id.* at 101, 135.

Eventually, Landry testified that he "couldn't take it [any] more" and reported Phillips's behavior to CB&I's human resources department without Beck's approval. *Id.* at 90-91, 129. On May 13, 2019, Landry issued a "final warning" to Phillips for violating CB&I's attendance policy on numerous days. Record Document 70-2, at 168.

2

To issue this warning, Landry said that he met with Taylor Spencer ("Spencer"), a CB&I human resources representative. Landry's Dep. 130. During this meeting, Landry admitted that he did not complain about Beck or Beck's perceived preferential treatment of Phillips. *Id.* at 131. Specifically, Landry said "I went to Human Resources to complain about Caleb. I didn't go to complain about James." *Id.* As for his conversation with Spencer about Phillips, Landry also testified that the discussion "wasn't about race." *Id.* at 132.

About a year after disciplining Phillips, on May 10, 2019, Beck informed Landry that he had been demoted. Landry's Dep. 153. According to Landry, Beck told him that a labor crew needed eight members, and Landry's crew only had three. *Id.* at 147, 152. As a result, Beck said that he chose to merge Landry's labor crew into the labor crew supervised by Duane Quanstrom. *Id.* at 149. In his deposition, Landry said that Quanstrom's original crew had fewer people (two) than his crew and Quanstrom, who is white, was less qualified than he. *Id.* at 150, 152. Because of the merger, Landry no longer had authority to supervise other employees even though his title and pay never changed. *Id.* at 153.

In his deposition, Landry testified that he made "verbal" complaints to Spencer "a few times after my demotion" about discrimination. Landry's Dep. 133, 135. Landry said that he had been the only African American foreman under Beck, and he had more experience than Quanstrom, so Beck's decision to demote him made him "feel as if it was because of my race." *Id.* at 137. At one point, Landry also emailed an unknown CB&I corporate representative to complain that Beck operated a "buddy"

system, giving preferential treatment to his friends. *See* Record Document 70-2, at 183. But Landry admits that he never complained about racial discrimination in this communication. Landry's Dep. 220.

Three days after his demotion, on May 13, 2019, Landry filed a charge of discrimination with the EEOC. Record Document 4, at 1. In that charge, Landry alleged that CB&I discriminated against him when it replaced him as supervisor with a less qualified white employee. *Id.* Landry testified that he did not tell Spencer about filing a charge of discrimination with the EEOC and admitted that he had no evidence Beck knew about the EEOC filing either. Landry's Dep. 225. A couple weeks after the charge, the EEOC sent notice of it to Judith Docherty ("Docherty"), the associate general counsel for CB&I's parent company, McDermott International, Inc. ("McDermott"). Record Document 70-2, at 217. However, in his deposition, Landry admitted that he had no evidence Docherty shared this notice with anyone who had decision-making authority over his employment. Landry's Dep. 343.

Also on May 13, 2019, Landry injured himself on his first day of work after the demotion. *See* Landry's Dep. 178. While attempting to move lighting equipment, Landry felt a "pop" in his back and suffered a lumbar strain. Landry's Dep. 164-65, 168. Landry received medical treatment and work restrictions, which he gave to CB&I. *Id.* CB&I complied with those restrictions and assigned Landry "light duty" work because of his injury. *Id.* Landry admitted that CB&I did not reduce his pay because of his injury, and at least twice, Landry admitted that CB&I did not terminate his employment because of his back injury. Landry's Dep. 171-72.

4

Between May 21, 2019 and May 23, 2019, CB&I supervisors reported that they observed Landry on his cellphone in a construction zone on two occasions. First, on May 21, 2019, Quanstrom and Alex Nagy, another foreman under Beck's supervision, found Landry inside a truck behind the mechanic's shop when he should have been "in the field." Record Document 70-2, at 186-87. Quanstrom and Nagy observed Landry talking on his cellphone, and when they approached his truck, they saw Landry "turn his phone screen off and put it in his pocket." *Id.* Second, on May 23, 2019, Quanstrom once again saw Landry behind the mechanic's shop talking on his cellphone. *Id.* at 173-74. Quanstrom overheard Landry in a "heated dispute," screaming: "well take your stuff and get the fuck out[.] I'm fucking done with this shit[.] I ain't [sic] doing this with you no [sic] fucking more." *Id.* at 174.

CB&I maintained a mobile device policy for the Cameron LNG Project. Record Document 70-2, at 189. Under its policy, employees could not use mobile devices "for business or personal purposes in construction zone areas[.]" *Id.* at 189, 202. The policy further stated that "[m]obile devices are only permitted to be used or displayed inside Lunch Tents during assigned Lunch Breaks." *Id.* The policy also identified the punishment for its violation: "Anyone caught using or displaying a mobile device outside of Lunch Tents…will be subject to immediate termination." *Id.*

On May 23, 2019, Spencer told Landry that CB&I had terminated Landry for his violations of its mobile device policy. *See* Landry's Dep. 108 ("Taylor Spencer called me in and said that he was terminating me for being on the phone or something like that."). In its termination letter, CB&I specified that Landry "was found to be

out of his assigned work area and using his personal cellphone during active work hours. This is the second time in 72 hours that the employee has been found out of his work area and displaying his personal cellphone." Record Document 70-2, at 172. Landry acknowledged that violating the mobile device policy could result in termination but denied that he committed such a violation. Landry's Dep. 234, 251. According to Landry, the witness statements had been "fabricated." *Id.* at 251-52. But when asked for evidence of this fabrication, Landry admitted that he based that claim on his "speculation." *Id.* at 252.

After Landry's termination, the EEOC issued a notice of rights to Landry that found "reasonable cause to believe that violations of the statute(s) occurred[.]" Record Document 3, at 1. Landry then filed this lawsuit. Record Document 1. CB&I has filed a motion for summary judgment and pointed to the absence of supporting evidence for Landry's claims, arguing Landry relies on "personal conclusions and unsupported suspicions." Record Document 70-1, at 7. Landry, who is proceeding pro se, has filed an opposition. Record Document 72.

## Standard

Federal Rule of Civil Procedure 56(a) requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When the burden at trial will rest on the nonmovant, the movant need not produce evidence to negate the elements of the nonmovant's case; rather, it need only point out the absence of supporting evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant

satisfies its initial burden, the nonmovant must demonstrate a genuine dispute exists by "going beyond the pleadings" and "designating specific facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). This burden requires more than metaphysical doubt, conclusory or unsubstantiated allegations, or a mere scintilla of evidence. *Id.*

## Analysis

Landry has asserted four causes of action against CB&I. *See* Record Document 10, at 8-14. First, Landry alleged that CB&I violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII") either when it demoted him after complaining about his supervisor's preferential treatment of other employees or when it terminated him for filing an EEOC charge. *Id.* at 9. Second, Landry alleged that CB&I also violated Title VII when it demoted him as a supervisor rather than a less qualified white employee. *Id.* at 11. Third, Landry claimed that CB&I violated the Americans with Disabilities Act, 42 U.S.C. § 12112(a), ("ADA") when it terminated him because of a back injury. *Id.* at 13. Finally, Landry asserted causes of action for retaliation and discrimination under 42 U.S.C. § 1981. *Id.* at 13-14. Because Landry's claims under § 1981 and Title VII are "parallel causes of action," the Court hereinafter considers them together. *Foley v. Univ. Houston Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003) (explaining that "[e]ach requires proof of the same elements in order to establish liability.").

## I.   Title VII Retaliation

An employer cannot discriminate against an employee for engaging in conduct protected by Title VII. *Thomas v. Tex. Dep't Crim. Just.*, 220 F.3d 389, 394 (5th Cir. 2000). The familiar burden shifting analysis of *McDonnell Douglas* applies to Title VII retaliation claims. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996). Under the *McDonnell Douglas* framework, the employee must first establish a prima facie case of retaliation. *Id.* If the employee does so, the burden shifts to the employer who must "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* at 305. Then, the ultimate burden shifts back to the employee who "bears the burden of proving that the employer's reason is a pretext for the actual retaliatory reason." *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 492 (5th Cir. 2011).

To survive summary judgment, Landry must first establish a prima facie case of retaliation. Landry must establish that (1) he participated in a Title VII protected activity, (2) he suffered an adverse employment action by his employer, and (3) there is a causal connected between the protected activity and the adverse action. *Stewart v. Miss. Transp. Com'n*, 586 F.3d 321, 331 (5th Cir. 2009). If Landry cannot satisfy all three elements, summary judgment is appropriate. *Id.*

First, Landry must prove that he engaged in an activity protected by Title VII, which protects two forms of activity: opposition and participation. *Stingley v. Watson Quality Ford*, 836 F. App'x 286, 289 (5th Cir. 2020); *Newell v. Acadiana Planning Comm'n*, 637 F. Supp.3d 419, 433 (W.D. La. 2022) ("Title VII thus covers two distinct types of protected activity[.]"). Under the opposition clause, an employee who

8

"resist[s], confront[s], or withstand[s] practices made unlawful by Title VII" is protected. *Stingley*, 836 F. App'x at 289. Meanwhile, the participation clause protects an employee who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Carter v. Target Corp.*, 541 F. App'x 413, 417-18 (5th Cir. 2013).

In his complaint, Landry pleaded two activities, one implicating the opposition clause and another invoking the participation clause, which he claimed resulted in retaliation by CB&I. The Court address each in-turn.

Landry alleged that he complained to supervisors and human resources about racial harassment and preferential treatment and that these complaints resulted in his demotion. Record Document 10, at 9. Although complaints about racial discrimination could qualify as protected activity under the opposition clause, Landry has not produced any evidence that his complaints related to his race. The United States Court of Appeals for the Fifth Circuit has made clear that "an employee cannot simply complain that she received unfair or undesirable treatment." *Carter*, 541 F. App'x at 418.  Title VII does not protect "a vague complaint without any reference to an unlawful employment practice[.]" *Davis*, 448 F. App'x at 493.

In this case, the Court finds that Landry has not established that his complaints about unfair treatment related to race. Although Landry might have complained to Beck and Spencer about unfair treatment, without a reference to his race, such a complaint is not enough. *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008) ("Complaining about unfair treatment without

specifying why the treatment is unfair, however, is not a protected activity."). Not only did he produce no evidence of race-based complaints, but Landry admitted in his deposition that his complaints to Spencer and Beck before being demoted were not about his race. *See, e.g.*, Landry's Dep. 90-102 (testifying that he complained to Beck about Phillips's insubordination); Landry's Dep. 129-135 (testifying that his complaint to Spencer was not about Beck's refusal to "write up" Phillips, and his complaint about Phillips "wasn't about race[,]" and acknowledging he did not complain about race discrimination until after his demotion).

Liberally construing Landry's response, he seems to argue that the EEOC's finding of reasonable cause is evidence that supports his retaliation claim. *See also Nerren v. Livingston Police Dep't*, 86 F.3d 469, 472 n.16 (5th Cir. 1996) (noting that the court liberally construes the briefing of pro se litigants). An EEOC determination of reasonable cause is not binding upon the courts, and "the determination is not sufficient to defeat summary judgment where the determination is not supported by the summary judgment evidence." *Cruz v. Aramark Serv., Inc.*, 213 F. App'x 329, 335 (5th Cir. 2007).

Here, the EEOC's determination is not supported by the summary judgment evidence because Landry has produced no evidence, much less a scintilla of evidence, that his complaints of unfair treatment related to his race. Moreover, the EEOC determination of reasonable cause was conclusory, providing no information about what facts its relied upon or analysis it employed. *See, e.g.*, *Wright v. Columbia Women & Child. Hosp.*, No. 01-30575, 2002 WL 495325, at *4 (5th Cir. Mar. 18, 2002)

("The EEOC's conclusory opinion, unsupported by any evidence in the summary judgment record, is not sufficient to defeat the motion for summary judgment."). Therefore, Landry's reliance upon the EEOC determination of reasonable cause is unavailing.

Alternatively, Landry alleged that he engaged in protected activity when he filed an EEOC charge of discrimination and that this charge led to his termination. Record Document 10, at 9. Under the participation clause, an employee "who files a complaint with the EEOC engages in a protected activity." *Carter*, 541 F. App'x at 418. Here, CB&I does not dispute that Landry engaged in protected activity when he filed an EEOC charge of discrimination on May 13, 2019. Record Document 70-1, at 19. Accordingly, Landry has satisfied the first element of a prima facie case of Title VII retaliation.

Second, Landry must establish that he suffered an adverse employment action. As the Fifth Circuit has said, "it is beyond dispute that a termination constitutes an adverse action." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004). CB&I terminated Landry on May 23, 2019, and in its motion, CB&I does not dispute that this termination satisfies the second element of a prima facie case of retaliation.

Third, as the final element of his prima facie case, Landry must prove that a causal connection exists between his charge and termination. Landry seemingly argues that temporal proximity between the date of filing and the date of termination establishes this causal connection. *See* Record Document 72, at 2-3. "Close timing between an employee's protected activity and an adverse action against him *may*

provide the [needed] causal connection." *Swanson v. Gen. Serv. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (emphasis added). Here, Landry is correct that a relatively short time, only ten days, elapsed between when he filed the EEOC charge and when CB&I terminated him. Ultimately, however, Landry's argument fails, because at a minimum, he must establish that someone with decision-making authority over his employment knew that he filed an EEOC charge.

The causation prong of a "retaliation claim requires proof that the employer knew about the employee's protected activity." *Robinson v. Jackson State Univ.*, 714 F. App'x 354, 360 (5th Cir. 2017); *Manning v. Chevron Chemical Co.*, 332 F.3d 874, 883 (5th Cir. 2003) ("[I]n order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity."); *see also Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.").

Landry has produced no evidence that a decisionmaker responsible for his termination knew that he filed an EEOC charge. For his part, Landry admitted during his deposition that he told no one, including his supervisor, Beck, and human resources representative, Spencer, about filing an EEOC charge. Landry's Dep. 225. Instead, Landry claims that CB&I had knowledge of his EEOC charge because the EEOC sent an email notification to the associate general counsel of CB&I's parent company, McDermott. The Court finds this argument unavailing.

12

The Fifth Circuit requires that an employee provide "proof of 'actual' decisionmaker knowledge." *Robinson*, 714 F. App'x at 360. "Constructive notice including 'general corporate knowledge' is insufficient." *Hauser v. Schneider Elec. Sys. USA, Inc.*, 819 F. App'x 247, 251 (5th Cir. 2020). Landry has no evidence that McDermott's associate general counsel told anyone, much less his supervisors, about the existence of his EEOC charge. Landry's Dep. 343. Because Landry cannot show that a decisionmaker responsible for his termination knew about the EEOC charge, Landry cannot establish a causal connection between it and his later termination. And without that connection, Landry has failed to establish a prima facie case of retaliation.

## II.    Title VII Discrimination

Title VII makes it unlawful to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race[.]" *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 502 (5th Cir. 2023) (abrogating requirement that an employee show "an ultimate employment decision[.]"). A burden shifting framework applies to Title VII discrimination claims, and the employee must first establish a prima facie case of discrimination. *Lee v. Kan. City R.R. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). If he does, the burden shifts to the employer "who must offer an alternative non-discriminatory explanation for the adverse employment action." *Id.* Once an employer has offered a non-discriminatory explanation, "the burden shifts back to the employee to demonstrate that the employer's explanation is merely a pretext for racial bias." *Id.*

Here, Landry alleged that CB&I discriminated against him when it demoted him in favor of a less qualified, white employee. Record Document 10, at 11. CB&I has conceded for purposes of its motion that Landry can establish a prima facie case of discrimination. Record Document 70-1, at 23-24. Nonetheless, CB&I argues that summary judgment is appropriate because it has offered a legitimate, non-discriminatory reason for Landry's demotion and Landry has no competent evidence of pretext. *Id.*

The Court holds that CB&I has articulated a legitimate, non-discriminatory reason for demoting Landry. Based on Landry's own testimony, Beck informed Landry that his crew had less than "eight members" and would be merged with another crew. Landry's Dep. 147, 149, 157. Landry does not dispute that his crew consisted of only three people. *Id.* at 152. Landry also admitted that he did not know why Beck decided to give his crew to Quanstrom. *Id.* at 157. And Landry acknowledged that Beck only ever discussed the size of Landry's crew and never referenced race in explaining his decision to merge Landry's crew. *Id.* at 156-57. Merging Landry's labor crew into another one because of its size is a legitimate, non-discriminatory business decision that this Court will not second guess. *King v. W.W. Grainger, Inc.*, 502 F. App'x 360, 363 (5th Cir. 2013) ("[D]iscrimination laws were 'not intended to be a vehicle for judicial second-guessing of business decisions, nor [are they] intended to transform the courts into personnel managers.").

Having held that CB&I articulated a legitimate, non-discriminatory reason for its decision, the ultimate burden returns to Landry who must produce "substantial

evidence" that the "proffered reason is pretext for race discrimination." *Watkins v. Tregre*, 997 F.3d 275, 283 (5th Cir. 2021). An employee can "establish pretext either through evidence of disparate treatment or by showing that the proffered explanation is false or unworthy of credence." *Id.*

Albeit unclear, Landry appears to argue that CB&I's reason for demotion is false. Record Document 72, at 7. "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). To defeat summary judgment, "evidence of falsity must be of sufficient nature, extent, and quality to make the inferential leap to discrimination a rational one." *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 826 n.7 (5th Cir. 2022).

In his opposition to the pending motion, Landry made the inapposite argument that CB&I made a "false statement" to the EEOC and that this statement constitutes evidence of pretext. Record Document 72, at 7. CB&I took the legal position during the EEOC's administrative proceeding that merging Landry's crew into another one did not constitute an adverse employment action. *See* Record Document 72-1, at 8. According to CB&I's argument at the time, Landry had not been demoted because his title and pay never changed. *Id.* Of course, CB&I has correctly abandoned that argument now. *See Hamilton* 79 F.4th at 502. But even if CB&I had not changed course, its legal argument during an administrative proceeding has no bearing on the truthfulness of Beck's posited reason for merging Landry's crew, that is, Landry needed but did not have eight members. And to the extent that Landry stated in his

deposition that Beck's belief that each crew needed eight members was incorrect, "an honest belief in a non-discriminatory reason for discharge, even if incorrect, is not discrimination." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999) (quoting *Smith v. St. Regis Corp.*, 850 F. Supp. 1296, 1318 (S.D. Miss. 1994)). As such, Landry has failed to provide "substantial evidence" that CB&I's legitimate, non-discriminatory reason was a pretext for racial bias, and his Title VII discrimination claim fails.

### III.    ADA Discrimination

The ADA prohibits covered employers from discriminating against a qualified individual because of that individual's disability. 42 U.S.C. § 12112(a). To prevail, the employee must first establish a prima facie case of discrimination. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004). As such, the employee must demonstrate that (1) he is disabled within the meaning of the ADA; (2) he is qualified and able to perform the essential functions of his job; and (3) his employer's adverse employment action was based on his disability. *Id.* If an employee does not make this showing, summary judgment is appropriate. *Holtzclaw v. DSC Commc'n Corp.*, 255 F.3d 254, 257-58 (5th Cir. 2001).

In this case, Landry alleged that CB&I terminated him because of a back injury that he suffered on the first day after his demotion. Record Document 10, at 13. The Court does not address the first two elements of Landry's prima facie case of because he cannot satisfy the third element—whether CB&I terminated him because of his alleged disability.

16

Landry must establish a causal nexus exists between the adverse employment decision and his disability. *See EEOC v. LHC Grp.*, 773 F.3d 688, 700-01 (5th Cir. 2014); *Troutman v. Williamson Cnty.*, No. 14-986, 2016 WL 1257989, at *6 (W.D. Tex. Mar. 30, 2016) ("[I]n order to establish a prima facie case for disability discrimination, a plaintiff must show that there was a causal nexus between the adverse employment decision and his disability."). Landry cannot show a nexus because he admitted at least twice during his deposition that his back injury *did not* cause his termination. Landry's Dep. 171-72. Moreover, Landry has not identified any other evidence that shows CB&I terminated him because of his back injury. *See, e.g., Callais v. United Rentals N. Am., Inc.*, No. 17-312, 2019 WL 2169182, at *5 (M.D. La. May 17, 2019) ("Plaintiff fails to direct the Court to any summary judgment evidence showing that [defendant] fired him because of his disability."). Therefore, Landry has failed to establish a prima facie case of ADA discrimination.

## Conclusion

For the above reasons, Landry's claims for discrimination and retaliation fail, and CB&I is entitled to summary judgment. Accordingly, all his causes of action set forth in this case are dismissed with prejudice.

**DONE AND SIGNED** at Shreveport, Louisiana, this 10th day of April, 2026.

_____
ALEXANDER C. VAN HOOK
UNITED STATES DISTRICT JUDGE